# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CRANE on behalf of himself and on behalf of all persons similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>JELD-WEN, INC.,<br><br>                              Defendant. | Case No.: 17cv455-L(WVG)<br><br>**CLASS ACTION**<br><br>**JUDGMENT AND ORDER (1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND PLAINTIFF'S ENHANCEMENT PAYMENT** |

      In this wages and hours action for violation of California labor laws a class action has been certified and settlement approved on a preliminary basis. Plaintiff Jason Crane moves for final class action settlement approval and for attorneys' fees, costs, litigation expenses and Plaintiff's enhancement payment. Defendant Jeld-Wen, Inc. does not oppose the motions. Having read and considered the motions, including supporting declarations, exhibits and the settlement, the motion for final approval of class action settlement (doc. no. 41) is granted, and the motion for attorneys' fees, costs, and Plaintiff's enhancement payment (doc. no. 40) is granted in part and denied in part.

/ / / / /

Plaintiff alleges failure to pay overtime wages, failure to provide accurate wage statements, and failure to pay all wages owed upon termination in violation of California Labor Code Sections 510, 226(a), 201, and 202. The same claims were also brought under the Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.* ("PAGA"). Plaintiff further alleges a claim for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* Plaintiff seeks statutory damages, civil penalties, restitution, pre-judgment interest, and attorneys' fees on his own behalf and on behalf of the putative class, as well as civil penalties under PAGA on behalf of the Labor and Workforce Development Agency ("LWDA"). The action was removed from State court. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

After investigating Plaintiff's claims through informal and limited formal discovery, the parties settled in private mediation. Plaintiff filed a motion for preliminary class action settlement approval. (Doc. no. 37.) The Court granted the motion and ordered that notice of class action and settlement be sent to the putative class. (Doc. no. 39 ("Preliminary Approval Order").) Plaintiff requests final approval of settlement in accordance with the Amended Joint Stipulation and Settlement Agreement, which together with attached exhibits, sets forth the terms and conditions of the class action settlement as currently proposed. (Doc. no. 37-2 ("Settlement").)

**Notice to the Class**

In the Preliminary Approval Order the Court approved with additional instructions the proposed notice of class action and the proposed settlement, together with procedure to opt out, dispute the estimated individual settlement amount, and object to the Settlement. The Court set a schedule for notice, exclusions, disputes, and objections. Notice was sent by first class mail to all 1,148 putative class members. Ultimately, 30

/ / / / /

notice packets remain undeliverable. (Decl. of Melissa Meade (doc. no. 41-3) at 2.)[1] Individual notice to putative class members in accordance with the Preliminary Approval Order satisfies due process and Federal Rule of Civil Procedure 23(c)(2) and (e)(1), was the best notice practicable under the circumstances, and constituted due and sufficient notice to all putative class members.

### **Class Membership and Representation**

Further, in the Preliminary Approval Order the Court certified this action as a class action consisting of individuals who were not paid overtime wages at the lawful rate of pay for all work performed, did not receive duty-free meal and rest periods, received inaccurate wage statements, and, where applicable, were not paid all wages earned as of the time of separation from employment. For the reasons stated in the Preliminary Approval Order, and in the absence of objections or new evidence, the Court certifies for settlement purposes only:

> a class consisting of all of Defendant's hourly, non-exempt production line and line-supporting employees who worked in the State of California at any time between February 1, 2013 and March 26, 2018 ("Class"), and a subclass consisting of those members of the Class who, at any time from February 1, 2014 through March 26, 2018, were separated from employment with Defendant ("Subclass").

Four Class members who requested exclusion are not included in this class action. Accordingly, all Class members who were sent notice and have not excluded themselves are included in the Class and, if applicable, the Subclass.

In the Preliminary Approval Order the Court also provisionally appointed Plaintiff as the Class and Subclass Representative, Plaintiff's counsel Alexander I. Dychter as the Class Counsel, and Phoenix Settlement Administrators as the Claims Administrator. / / / / /

---

[1] Page numbers are assigned by the Electronic Filing System.

Based on the affidavits filed in support of the appointments and in the absence of any objections, the foregoing appointments are confirmed.

In addition, the Court appoints S. Adam Spiewak, a member of Dychter's firm, as Class Counsel. Along with Dychter, Spiewak filed a declaration requesting attorneys' fees. (Spiewak Decl. (doc. no. 40-3).)[2] Because Spiewak is a member of Dychter's firm with sufficient qualifications for appointment as class counsel under Rule 23(g), and because he has performed services on behalf of the putative Class throughout this action, he is retroactively appointed. (*See* Spiewak Decl. at 1.)

### Settlement Fairness

Finally, in the Preliminary Approval Order the Court approved the Settlement. Class action settlements require court approval, which may be granted based on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e). "[S]ettlement of class actions present[s] unique due process concerns for absent class members [in part because] class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted); *see also Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (noting the possibility of tradeoff between merits relief and attorneys' fees often implicit in class action settlement negotiations.) To guard against this potential abuse, Rule 23(e) requires court approval of all class action settlements. *Bluetooth*, 654 F.3d at 946. The Court's "role is to police the inherent tensions among class representation, defendant's interests in

/ / / / /

---

[2] Only Dychter was initially appointed Class Counsel. (Preliminary Approval Order at 3.) No mention of Spiewak was made in Plaintiff's application for preliminary approval. (*See* docs. no. 37 through 37-3.) Counsel, both of whom profess to be highly experienced, should have timely disclosed the identity and qualifications of all counsel who wished to represent the Class and expected to be paid under Rule 23(h).

4

minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton v. Boeing Co.,* 327 F.3d 938, 972 n.22 (9th Cir. 2003).

In making the settlement fairness assessment, the Court weighs the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth,* 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); other citation omitted) ("*Churchill* factors"). Where, as here,

> a settlement agreement is negotiated prior to formal class certification, consideration of these eight *Churchill* factors alone is not enough . . . . [¶] Prior to formal class certification, there is even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.

*Bluetooth,* 654 F.3d at 946.

The Settlement provides for a $625,000 payment from Defendant to be allocated as follows: (1) settlement administration expenses of $12,000;[3] (2) Class Counsel's fees not

/ / / / /

---

[3] Although the Settlement provides for up to $15,000 without Defendant's objection, Plaintiff is requesting $12,000. (*Cf.* Settlement ¶ 4.5; Mot. for Settlement Approval (doc. no. 41) at 6.)

to exceed $156,250; (3) Class Counsel's costs and litigation expenses in the amount of $9,162.82;[4] (4) Plaintiff's enhancement payment not to exceed $8,500; (5) $15,0000 in PAGA penalties to the LWDA, (6) the employer's share of payroll taxes to the extent the Settlement is allocated to wages; (7) $100,000 settlement of Subclass claims, distributed equally to each Subclass member; and (8) the remaining balance ("Net Settlement Amount") distributed *pro rata* to all Class members, including Subclass members.  Class Counsel's fees, costs and litigation expenses, and Plaintiff's enhancement payment are subject to Court approval.  To the extent the requested sums are not approved in full, the difference reverts to the Net Settlement Amount.  (Settlement ¶¶ 1.13, 4.3, 4.4.)

If the attorneys' fees, costs, and Plaintiff's enhancement payment are approved in full, the Net Settlement Amount will be $309,087.18.  (Meade Decl. at 4.)  In addition, $100,000 is reserved from Defendant's payment for distribution to the Subclass.  (*Id.*) Accordingly, the Settlement provides for an approximately $409,087.18 distribution to the Class and Subclass members.

Because individual awards can be calculated from Defendants' records, this is a non-claims-made settlement.  Class members were instructed to contact the Claims Administrator if they disagreed with the calculation of their individual estimated payment which was included in the notice of Settlement.  No Class members have disputed their estimated individual awards, and none have objected to the Settlement.  (Meade Decl. at 3.)  If the attorneys' fees, costs, litigation expenses and Plaintiff's enhancement payment are approved in full, a median payment to the Class members is estimated at $172.70.  (*Id.* at 4.)  Each Subclass member is estimated to receive an additional $155.76.  (*Id.*)
/ / / / /

---

[4]   The Settlement provides for costs of up to $12,000 without Defendant's objection, however, Plaintiff is requesting $9,162.82. (Notice of Mot. for Atty Fees (doc. no. 40) at 2.)

1    The parties settled without substantive motions or extensive formal discovery.
2 Class Counsel reviewed raw time records at Defendant's office and analyzed Defendant's
3 written discovery responses and Plaintiff's documents in preparation for mediation.
4 (Decl. of Alexander Dychter (doc. no. 40-2 ("Dychter Atty Fee Decl.") at 6; Spiewak
5 Decl. at 3.)  They estimated Defendant's potential liability exposure at approximately $ 5
6 million. (Decl. of Alexander Dychter (doc. no. 41-2 ("Dychter Decl.")) at 3.)  On the
7 other hand, as noted in the order denying Plaintiff's initial motion for preliminary
8 approval of class action settlement, Plaintiff faced difficulties with class certification and
9 proof of liability.  (Doc. no. 33 at 2.)

10    Based on review of the Settlement, experienced counsel's endorsement of the
11 Settlement, lack of objections or disputes from members of the Class or Subclass, the
12 Settlement is fair, reasonable, and adequate, when considered in light of the cost and
13 uncertainty associated with further litigation.  The proposed manner of distributing the
14 Settlement checks to the Class by first class U.S. mail is also approved as fair and
15 reasonable.  (*See* Decl. of Michael Moore (doc. no. 37-3) Ex. B; Meade Decl. Ex. 1 ¶ C.)
16 Finally, the payment of any uncashed Settlement checks to the State of California –
17 Unclaimed Funds Department is approved as fair and reasonable.  (*See* Settlement ¶ 4.9.)

### Class Counsel Fees

19    "[A]ttorneys' fees and costs may be awarded in a certified class action where so
20 authorized by law or the parties' agreement."  *Bluetooth*, 654 F.3d at 941(citing Fed. R.
21 Civ. Proc. 23(h)).  "The award of attorneys' fees in a class action settlement is often
22 justified by the common fund or statutory fee-shifting exceptions to the American Rule,
23 and sometimes by both."  *Id.*  Attorneys' fees in the pending case are based on the
24 Settlement, which provides for payment of attorneys' fees, costs and Plaintiff's
25 enhancement payment from a common fund.  (Settlement ¶ 4.1; *see also* Mot. for Atty
26 Fees (doc. no. 40-1) at 2 ("common fund").)  Alternatively, fees can be based on
27 California Labor Code § 226(e), which makes an award of reasonable attorneys' fees
28 mandatory to an employee suffering an injury cognizable under § 226(a).  *See Harrington*

*v. Payroll Entm't Servs., Inc.*, 160 Cal. App. 4th 589 (2008). Similarly, PAGA provides for attorneys' fees to a prevailing plaintiff. Cal. Lab. Code § 2699(g)(1).

Courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount. *Bluetooth*, 654 F.3d at 941. Two different methods for calculating reasonable attorneys' fees have been approved depending on the circumstances -- the lodestar method and percentage-of-recovery method. *Id*. at 941-42.

> Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. [] Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result.

*Id*. at 942 (internal quotation marks and citations omitted).

Class Counsel seek attorneys' fees of $156,250, representing 25% of the common fund.

> In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. The reason for the usual insistence upon judge-conferred common fund fees is that . . . in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have [therefore] stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Staton*, 327 F.3d at 970 (internal quotation marks and citation omitted).

/ / / / /

"The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Here, the benchmark appears high given that the case settled before class certification, without substantive motions, and with limited formal discovery. In addition, the Settlement includes a "clear sailing" provision (Settlement ¶¶ 4.3, 4.4) whereby "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *Bluetooth,* 654 F.3d at 940 n.6. This "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id.* at 947. As noted in *Vizcaino*,

> Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.

*Id*. at 1050.

Under the circumstances of this case, the Court uses the lodestar method to determine whether the 25% benchmark rate is reasonable.

> The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is "presumptively reasonable," the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors.

*Bluetooth*, 654 F.3d at 941-42 (citations omitted).

Class Counsel provided declarations in support of their request for attorneys' fees. Dychter spent anywhere between 155 and 163 hours on the case at a rate of $625 per hour, and Spiewak spent between 192 and 219 hours at the rate of $600 per hour. (Dychter Atty Fee Decl. at 5-7; Spiewak Decl. at 2-3.) They contend that the lodestar is

1 $221,875, whereas they are requesting only $156,250 as 25% of the common fund. (*See* Dychter Atty Fee Decl. at 5.)

Neither attorney has provided evidence that his billing rate is "a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth,* 654 F.3d at 941. Dychter has 15 years of experience, which consists almost exclusively of representing employees in class action litigation. (Dychter Atty Fee Decl. at 1-2.) Spiewak has 13 years of experience in California employment law, his specialty. (Spiewak Decl. at 2.) Based on the Court's own experience, the rates charged are high for employment class action practice in this District for attorneys with Class Counsel's experience. In addition, as reflected in Class Counsel's declarations summarizing their work, they performed many tasks that could have been performed by less experienced associates or paralegals, who would bill at a lower rate.[5] The Court therefore sets a reasonable billing rate for each Class Counsel at $575 per hour.

The Court next considers attorneys' declarations regarding the work they performed and the amount of time they spent. Neither attorney provided billing records but summarized his time in a general manner without breaking it down by date or specifying the amount of time spent on each task. (*See* Dychter Atty Fee Decl. at 5-7; Spiewak Decl. at 2-3.) The amount of time attributed to a group of tasks is often provided as an approximate range, rather than a specific quantity. Block billing like this "makes it more difficult to determine how much time was spent on particular activities," may support a finding that the attorney failed to carry his burden and may therefore

/ / / / /

---

[5]   *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 288 n.10 (1989) ([P]aralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.").

warrant a reduction to arrive at the reasonable number of hours. *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007).

Upon review of the time summaries in light of the entire record before the Court, the total number of hours, which the Class Counsel estimate between 347 and 382, appears excessive. Counsel broke down their time into approximately 18 categories,[6] which are reviewed below.

1. Dychter charged 22 to 25 hours for client intake, speaking with co-counsel, discussion with Spiewak, drafting the complaint and first amended complaint ("FAC"), drafting the PAGA letter and submitting it to the LWDA, drafting the joint motion regarding filing the FAC, and review of the notice of removal. Spiewak charged 8 to 10 hours for some of the same tasks -- reviewing and revising the complaint and FAC, reviewing and revising the joint motion, and "related research." Aside from being duplicative, the time charged for these tasks is excessive considering the Class Counsel's professed experience with employee class action litigation. The Court credits counsel with a total of 20 hours.

2. Dychter charged 2 hours for discussing initial disclosures with Plaintiff, appearing for a telephonic conference with Magistrate Judge Gallo, participating in a case management conference before Judge Gallo, and reviewing and revising initial disclosure materials and the joint discovery plan. Spiewak charged 4 hours for reviewing and revising initial disclosure materials and the joint discovery plan and conferring with co-counsel about it. Because the time charged for these tasks is partly duplicative, counsel are credited with 4 hours.

3. Dychter charged 3 hours for reviewing and revising the ENE statement and "settlement." Spiewak charged 4 hours for reviewing and revising the ENE statement

/////

---

[6] All entries are found at Dychter Atty Fee Decl. at 5-7 and Spiewak Decl. at 2-3.

1  and settlement proposal and conferring with co-counsel about it.  Because the time
2  charged for these tasks is duplicative, counsel are credited with 4 hours.

3     4.   Dychter charged 3 to 5 hours for drafting, reviewing, revising and
4  propounding discovery.  Spiewak charged 1 to 2 hours to review discovery.  The time
5  charged for these tasks is duplicative.  Accordingly, counsel are credited with 4 hours.

6     5.   Dychter charged 24 to 28 hours for reviewing, analyzing and evaluating
7  Defendant's disclosures, discovery responses and document productions, and for meeting
8  and conferring with opposing counsel about discovery issues.  Spiewak charged 8 to 10
9  hours for reviewing, analyzing and evaluating Defendant's disclosures and ENE
10 statement, answer, discovery responses and document productions.  Because the time
11 charged for these tasks is largely duplicative, counsel are credited with 30 hours.

12     6.   Dychter charged 2 hours to "Review correspondence to opposing counsel."
13 Spiewak charged 10 hours for "Reviewing, Preparing, and Revising correspondence to
14 opposing counsel."  These entries are entirely inadequate because they do not disclose
15 how many pieces of correspondence are involved or the extent of any duplication of
16 work.  This case was litigated for less than a year and settlement communications are
17 included in a separate category; accordingly, the time charged appears excessive.
18 Counsel are credited with 5 hours.

19     7.   Dychter charged 2 hours for communications with Plaintiff and co-counsel
20 to clarify facts and claims.  Spiewak charged 5 hours for the same tasks.  Because the
21 time charged for these tasks appears duplicative, counsel are credited with 5 hours.

22     8.   Dychter charged 1 hour for reviewing and analyzing Plaintiff's documents.
23 Spiewak charged 5 hours for same.  Given that review of discovery responses and time
24 records in Defendant's possession are included in separate entries, the time charged is
25 excessive.  Counsel are credited with 4 hours.

26     9.   Dychter charged 15 hours to prepare Plaintiff for deposition, attend the
27 deposition, and review and assess changes to the transcript.  Spiewak charged 6 to 7
28 / / / / /

hours to review and address changes to Plaintiff's deposition transcript. Because the time Spiewak charged for these tasks is duplicative, counsel are credited with 15 hours.

10. Dychter charged 2 hours to review and analyze additional documents produced by Defendant. Spiewak charged 5 to 6 hours for the same task. The time charged for these tasks is duplicative. Counsel are credited with 6 hours.

11. Spiewak charged 8 to 10 hours to research and analyze legal issues related to the claims. Given that Spiewak has 13 years of experience in employment law, and that the record does not reflect any unusual issues, the time charged is excessive. Counsel is therefore credited with 5 hours.

12. Dychter charged 22 hours to review time records at Defendant's office, send an introduction letter to the putative Class members selected from a random sample, follow up with calls and draft memos based on the calls. He charged an additional 10 hours for communicating with putative Class members throughout the case, including during the notice period. Spiewak charged 8 to 10 hours for communicating with putative Class members, including taking notes, overseeing interviews with putative Class members, and reviewing notes from these communications. These time entries are inadequate, because they do not show how many Class member communications are involved or the extent of any duplication of work between co-counsel. Because the number of hours appears excessive on its face in addition to being somewhat duplicative, counsel are credited with 25 hours.

13. Spiewak charged 20 hours to analyze Defendant's data and documents to create exposure analysis for mediation. This time appears reasonable and is fully credited.

14. Spiewak charged 52 to 56 hours for preparing and revising the mediation brief, discussing mediation strategy, pre-mediation calls with the mediator, travel to and from Orange County and attending mediation, and for post-mediation strategy and communications. Dychter charged 20 hours for reviewing the "damage model" and mediation brief, multiple conversations with co-counsel, travel to Orange County for

mediation, attend mediation and travel back. No justification is provided why both counsel had to attend mediation. The time charged is duplicative and excessive. Counsel are credited with 25 hours.

15. Dychter charged 8 to 10 hours for working on administrative motions and submissions, "including Motion to Continue Deadlines; Notice of Settlement; Joint Motion for Protective Order; etc." Spiewak charged 8 to 10 hours for same. The entries are entirely duplicative. Furthermore, given Class Counsel's level of experience, they are excessive. Counsel are credited with 5 hours.

16. Dychter charged 10 hours for drafting the long form settlement agreement and negotiations with opposing counsel about it. Spiewak charged 4 to 6 hours for same. This time appears reasonable. Counsel are credited with 14 hours.

17. Dychter charged 8 hours for "Miscellaneous Housekeeping and Strategy Communications throughout case." Spiewak charged the same amount of time under precisely the same description. This entry is too vague. Given that Class Counsel's other time entries seem to cover all categories of attorney time on a litigated case, no hours are credited for "miscellaneous."

18. Dychter charged 19 hours for drafting the initial and amended preliminary approval motions and the pending fee motion. Spiewak charged 10 to 15 hours for reviewing and revising the initial and amended preliminary approval motions, and tasks related to settlement approval, including communicating with the Claims Administrator, co-counsel and opposing counsel. The Court declines to award fees for amending the motion for preliminary class action settlement approval. Dychter has 15 years of experience "almost exclusively " with "class action lawsuits on behalf of employees." (Dychter Atty Fee Decl. at 1.) The initial motion was denied due to failure to fully comply with Rule 23 requirements for settlement approval. Class members should not be charged for these revisions. Furthermore, the time spent drafting and revising the initial motion is duplicative, and therefore excessive. Based on the foregoing, counsel are credited with 19 hours.

After adjustments to Class Counsel's billing rates and the number of hours, the lodestar is $120,750. The lodestar is presumptively reasonable. *Bluetooth,* 654 F.3d at 942 n.7. However, it can be adjusted by an appropriate multiplier if necessary to achieve reasonableness. Twelve factors are relevant to determining whether attorneys' fees are reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.3d 67, 70 (9th Cir. 1975)). "Foremost among these considerations, however, is the benefit obtained for the class." *Bluetooth,* 654 F.3d at 942. "Thus, where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'" *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). On the other hand, "[c]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and because class counsel should not "necessarily receive a lesser fee for settling a case quickly." *Vizcaino*, 290 F.3d at 1050 n.5, 1051.

Here, Class Counsel estimated Defendant's exposure to be approximately $5 million (Dychter Decl. at 3), yet the total settlement amount, including attorneys' fees, claim administration and other items, is $625,000 (Settlement ¶ 4.1). Despite the modest benefit to the Class, upon consideration of the relevant *Kerr* factors and given adjustments to the reasonable hourly rate and number of hours, the lodestar reasonable. *See Bluetooth,* 654 F.3d at 942 n.7 (many *Kerr* "factors are subsumed within the initial

calculation of hours reasonably expended at a reasonable rate.") (internal quotation marks and citations omitted). "[T]he *Kerr* factors only warrant a departure from the lodestar figure in rare and exceptional cases." *Id.* (internal quotation marks and citations omitted). This is not a rare or exceptional case. It did not present unusually difficult or novel issues or circumstances. The attorneys' skills, risks of contingency litigation, preclusion of other work due to accepting this case, and the experience, reputation and ability of counsel are already reflected in the billing rates approved by the Court. The lodestar strikes a fair balance between the value of Class Counsel's work and the benefit conferred on the Class without unfairly penalizing the counsel for an early settlement.

Because the $120,750 lodestar represents a reasonable amount of attorneys' fees under the circumstances of this case, the Court finds the 25% benchmark excessive. The requested attorneys' fees are reduced by $35,500, which shall be added to the Net Settlement Amount for distribution to the Class. *See Staton*, 327 F.3d at 972 ("after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant"). (*See also* Settlement ¶¶ 4.3, 4.4.)

### Class Counsel Costs and Litigation Expenses

Counsel submitted a declaration with an itemized list of costs and litigation expenses amounting to $9,162.82. (Dychter Atty Fee Decl. at 7-8.) Copies of receipts were not provided, and various categories of costs incurred on a single occasion, for example, Plaintiff's deposition in Orange County, are presented as one amount, thus making review unnecessarily difficult. Nevertheless, the Court finds the requested amounts reasonable with two exceptions.

First, included in the requested amount are expenses incurred by Plaintiff for attending his deposition ($195.68 combined for counsel and Plaintiff mileage, parking and lunch) and mediation ($58.85 for mileage). Class counsel provided no authority to support awarding Plaintiff's own costs and expenses. The only means for Plaintiff to obtain compensation is through his application for an enhancement payment.

Nevertheless, these amounts are awarded because Plaintiff has requested an enhancement payment and the amounts are reasonable. These amounts are approved solely in the context of Plaintiff's request for an enhancement payment.

Second, Class Counsel request travel, food and lodging expenses related to mediation for both counsel. This includes airfare for one counsel for travel to Orange County. No reason is provided why both counsel had to attend or why air travel was necessary. Accordingly, $1,185.97 for Spiewak's expenses, including airfare, are excluded as unreasonable.

For the foregoing reasons, the Court awards $7,976.85 as costs and litigation expenses. The amount of reduction, $1,185.97, shall be added to the Net Settlement Amount for distribution to the Class.

## Plaintiff's Enhancement Payment

Plaintiff seeks $8,500 as enhancement payment. Incentive awards such as this "are discretionary and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action . . .." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The amount of the award must be related to the actual service or value the class representative provides to the class. *See id.* at 960.

Although incentive awards are "fairly typical in class actions," *Rodriguez*, 563 F.3d at 958, they "should not become routine practice," lest the representatives be "tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (internal quotation marks and citations omitted). The potential conflict between the representative and the class is exacerbated when, as here, there is a large difference between the requested enhancement award and individual class member recovery. *See id.* at 1165. Accordingly, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

By bringing this action against his employer, Plaintiff benefitted the Class and exposed himself to financial and reputational risk. If judgment were entered for Defendant, Plaintiff may have been liable for Defendant's costs. His job prospects may be affected by having sued a former employer. As a part of the Settlement, he signed a general release and given up a broader range of potential claims against Defendant than the Class members, who released Defendant only from the wages and hours claims which form the basis for this action. Plaintiff has not indicated that he had any additional claims against Defendant. Plaintiff has participated in the prosecution of this action, including responding to formal written discovery, submitting himself to a deposition, and attending a full-day mediation. He lost two days of earnings for attending his deposition and mediation. (Crane Decl. (doc. no. 40-4) at 2-3.)

On the other hand, the settlement obtained is moderate, and there is a large difference between the $8,500 payment Plaintiff requests for himself and the median estimated Class member award of $172.70, plus $155.76 to the Subclass members. Plaintiff has not indicated the amount of daily earnings he had lost and has not provided any estimate of the hours he spent in prosecuting this action. Some of Plaintiff's out of pocket expenses have been compensated through the award of costs and litigation expenses.

Based on the foregoing, the Court finds that $3,500 adequately compensates Plaintiff for his time, effort, expense, and risk. As with attorneys' fees, the $5,000 excess shall be added to the Net Settlement Amount for distribution to the Class.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's motion for final approval of class action settlement is granted.
2. The Court finds that individual notice to putative class members satisfies due process and Federal Rule of Civil Procedure 23(c)(2) and (e)(1), was the best notice practicable under the circumstances, and constituted due and sufficient notice to all putative class members.

/ / / / /

3. The Court certifies for settlement purposes only:

    a class consisting of all of Defendant's hourly, non-exempt production line and line-supporting employees who worked in the State of California at any time between February 1, 2013 and March 26, 2018, and a subclass consisting of those members of the Class who, at any time from February 1, 2014 through March 26, 2018, were separated from employment with Defendant.

Four Class members who requested exclusion are not included in the Class.

4. The appointments of Plaintiff as the Class and Subclass Representative, Plaintiff's counsel Alexander I. Dychter as Class Counsel, and Phoenix Settlement Administrators as the Claims Administrator are hereby confirmed. In addition, the Court appoints S. Adam Spiewak as Class Counsel.

5. The Settlement is fair, reasonable, and adequate, and meets the requirements for final approval under Rule 23(e). Included in this finding is the proposed manner of distributing Settlement checks to the Class by first class U.S. mail and the payment of any uncashed Settlement checks to the State of California – Unclaimed Funds Department.

6. The parties and Claims Administrator shall effectuate the Settlement according to its terms unless provided otherwise herein. Up to and including the date of this Order, each Class member shall be deemed to have conclusively released the released claims as provided in the Settlement.

7. The Court approves payment of $12,000 to the Claims Administrator as provided in the Settlement.

8. The Court approves payment of $15,000 to the LWDA as provided in the Settlement.

**9**. Plaintiff's motion for attorneys' fees, costs, litigation expenses, and Plaintiff's enhancement payment is granted as follows:

    a. Class Counsel shall receive $120,750 as attorneys' fees;

/ / / / /

        b.      Class Counsel and Plaintiff shall receive $7,976.85 for costs and litigation expenses as provided herein; and

        c.      Plaintiff shall receive $3,500 as an enhancement payment.

In all other respects, the motion is denied.

11. This Order constitutes and shall be entered as a final judgment dismissing this action with prejudice.

12. The Court retains jurisdiction for purposes of interpreting or enforcing the Settlement or judgment.

**IT IS SO ORDERED.**

Dated:  April 17, 2019

_____
Hon. M. James Lorenz
United States District Judge